UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **JIMMIE SPRATT** | **CIVIL ACTION** |
| **VERSUS** | **NO. 19-9115** |
| **DARREL VANNOY, WARDEN** | **SECTION "F"(4)** |

### REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations pursuant to **28 U.S.C. § 636(b)(1)(B) and (C)**, and as applicable, **Rule 8(b) of the Rules Governing Section 2254 Cases**. Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing. *See* 28 U.S.C. § 2254(e)(2).[1]

### I.  Factual and Procedural Background

The petitioner, Jimmie Spratt ("Spratt"), is a convicted inmate incarcerated in the Louisiana State Penitentiary in Angola, Louisiana.[2] On November 18, 2010, an Orleans Parish Grand Jury charged Spratt in a six count indictment with the aggravated rapes and aggravated kidnappings of three victims D.K., S.M., and M.L.[3]

The record reflects that, on July 4, 1994, D.K. was 24 years old and living with her parents.[4] D.K. decided to drive to Biloxi, Mississippi to meet friends. She borrowed her mother's debit card

---

[1] Under 28 U.S.C. § 2254(e)(2), an evidentiary hearing is held only when the petitioner shows that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable or a factual basis that could not have been previously discovered by the exercise of due diligence and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner.

[2] Rec. Doc. No. 1.

[3] St. Rec. Vol. 1 of 11, Indictment, 5/19/11; Grand Jury Return, 5/19/11. In accordance with La. Rev. Stat. Ann. §46:1844(W)(1), the Louisiana courts refer to the victims by their initials. This Court will do the same.

[4] The facts are taken from the published opinion of the Louisiana Fourth Circuit Court of Appeal on out-of-time direct appeal. *State v. Spratt*, 129 So.3d 741, 743-50 (La. App. 4th Cir. 2013); St. Rec. Vol. 10 of 12, 4th Cir. Opinion, 2013-KA-0158, pp. 2-18, 11/20/13.

and stopped at the ATM at a Hibernia National Bank on the I-10 Service Road near Crowder Boulevard in New Orleans, Louisiana. Unfamiliar with the location, she entered through the exit lane causing her to have to lean across the front passenger seat to reach the ATM. She withdrew $50 and, as she grabbed for the money, she saw a knife being shoved through the passenger window at her throat. The man, later identified as Spratt, unlocked and entered the back passenger door and climbed into the front passenger seat. He told D.K. not to look at him and to drive, yelling directions at her as they went. When she started to cry, he told her to shut up. He repeatedly cursed and hit the radio trying to change the channel off of a country music station. He was very angry and kept moving the car seat back and forth.

Spratt directed D.K. to Old Gentilly Boulevard and had her park in a gravel area behind the Acme Brick Company. Spratt ordered D.K. out of the car. She begged him not to hurt her because she already had a debilitating neck injury from her teens. Spratt shoved her against a wall and told her to shut up. He pulled her by the ponytail and unzipped her dress. He then forced her to the ground, pulled off her hose and underwear, and raped her. When he was finished, he yelled at D.K. to get dressed and get back in the car. He continued to yell directions at her and finally told her to stop. He got out of the car with the $50 and ran off.

D.K. drove back to the bank to get the debit card out of the machine. She saw a security guard on duty and told him that she had been raped. The security guard looked at her, got in his truck, and drove off. D.K. then drove to the Real Superstore next to the bank on Crowder Boulevard. An employee there helped her and called the police and her parents. After showing police where the rape occurred, her parents took her to the hospital where she was examined, and a rape kit was prepared. She also provided a description of Spratt with the help of a police sketch

2

artist. The police obtained a surveillance video from the bank that showed Spratt approaching D.K. with a knife and entering the back seat of her car.

On September 19, 1994, S.M., a 40-year-old female, was staying with friends on General Pershing Street while interviewing for jobs in New Orleans. Returning from dinner with her nephew, S.M. parked her car and walked towards the house. She saw an African American male, later identified as Spratt, walking towards her. As he passed her, he grabbed S.M. from behind and put a cold, metal object to her throat. Spratt told her to remain quiet and walked her back towards her car. He then took her into some bushes near the corner of Loyola Avenue and General Pershing Street. Spratt made S.M. lie down and threatened to kill her if she spoke. He pulled down her pants and underwear and raped her while telling her not to look at him. When he was finished, he told S.M. to lie on her stomach and keep her head down. He took her purse and ran off.

S.M. soon heard a car pass and voices coming from a nearby house on Loyola Avenue. She ran to the house and the residents called the police for her. She was taken to the hospital and a rape kit was prepared. She returned to the scene the next day to take pictures of the bushes where the rape occurred.

On December 26, 1994, M.L., a 16-year-old high school student, dropped off her friend at a home in Metairie and drove back towards her home in New Orleans. On the way, she stopped to deposit a check in the ATM at the Whitney National Bank on the corner of South Carrollton Avenue and Plum Street. She was filling out the deposit slip when she felt something being sprayed in her face through the open driver's window. A man, later identified as Spratt, got into the car, pushed her across to the passenger side, and told her to get on the floor. She could not see the man because she was blinded from the spray and having trouble breathing. The man drove the

car and took her to two separate locations where he raped her. At the first location, which was over some railroad tracks, she saw a big building with a corrugated metal roof. He walked her to a gravel area and told her to take off her pants. He made her lie down and then raped her. She remembered his face being scratchy and oily. Spratt made M.L. dress and get back in the car. He then drove a longer distance to a second location, where he put his arm around her neck and led her to the backyard of a house. He sprayed more mace in her face, took off her clothing, and raped her again. Spratt then drove M.L. to another location where he pulled into a driveway and parked the car. He took $70 from her wallet, her cell phone, and her keys. He sprayed her with mace again and left. M.L. took a few minutes to open her eyes and was able to figure out where she was. She ran to a Kinko's on Carrollton Avenue where an employee let her in and called the police. M.L. also called her parents and a friend. After talking with police, she was taken to the hospital for treatment of her injuries, and a rape kit was prepared. The police obtained photographs and video tapes from the Whitney branch.

The DNA samples from the rape kits of D.K., S.M., and M.L. were run through the Combined DNA Index System ("CODIS") in 2005 and matched Spratt as the rapist. The New Orleans police detectives discovered that Spratt at that time was incarcerated in Tennessee after convictions for the 1996 rapes of at least five women in Memphis. The New Orleans detectives obtained an arrest warrant and sent it to the Tennessee Department of Corrections to place a hold on Spratt.

Spratt was tried for the three New Orleans rapes before a jury on March 5 through 8, 2012, and unanimously found guilty as charged on all six counts.[5] On March 15, 2012, the Trial Court denied Spratt's motion for a new trial.[6] After waiver of legal delays, the Trial Court sentenced Spratt to life in prison with the sentences for counts one through four (crimes against D.K. and S.M.) to run concurrently, and the sentences on counts five and six (crimes against the minor M.L.) to run concurrent to each other and consecutive to the sentences on counts one through four.[7]

On May 8, 2012, Spratt was granted an out-of-time appeal on motion of his trial counsel.[8] Before the Louisiana Fourth Circuit Court of Appeal, Spratt's counsel asserted two errors for review:[9] (1) the Trial Court erred when it allowed the prosecution to use Spratt's prior convictions in violation of La. Code Ev. art. 412.2;[10] and (2) the Trial Court erred in allowing use of the prior convictions because La. Code Ev. art. 412.2 is unconstitutional. On November 20, 2013, the Louisiana Fourth Circuit affirmed Spratt's convictions and sentences finding no merit in the first claim and finding that the second claim was not preserved for appeal by objection in the Trial Court as required under La. Code Crim. P. art. 841.[11]

---

[5]St. Rec. Vol. 2 of 12, Trial Minutes, 3/5/12; Trial Minutes, 3/6/12; Trial Minutes, 3/7/12; Trial Minutes, 3/8/12; St. Rec. Vol. 9 of 12, Trial Transcript, 3/6/12; St. Rec. Vol. 10 of 12, Trial Transcript, 3/7/12; Trial Transcript, 3/8/12.

[6]St. Rec. Vol. 2 of 12, Sentencing Minutes, 3/15/12; St. Rec. Vol. 3 of 12, Trial Court Order, 3/15/12; Motion for New Trial, 3/15/12; St. Rec. Vol. 10 of 12, Sentencing Transcript, p. 4, 3/15/12.

[7]St. Rec. Vol. 1 of 11, Sentencing Minutes, 2/9/12; St. Rec. Vol. 8 of 11, Sentencing Transcript, 2/9/12.

[8]St. Rec. Vol. 1 of 12, Minute Entry, 5/8/12; St. Rec. Vol. 3 of 12, Motion for Out of Time Appeal, 5/8/12.

[9]St. Rec. Vol. 10 of 12, Appeal Brief, 2013-KA-0158, 4/15/13.

[10]Article 412.2(A) provides follows:
A. When an accused is charged with a crime involving sexually assaultive behavior, or with acts that constitute a sex offense involving a victim who was under the age of seventeen at the time of the offense, evidence of the accused's commission of another crime, wrong, or act involving sexually assaultive behavior or acts which indicate a lustful disposition toward children may be admissible and may be considered for its bearing on any matter to which it is relevant subject to the balancing test provided in Article 403.

[11]*Spratt*, 129 So.3d at 741; St. Rec. Vol. 10 of 12, 4th Cir. Opinion, 2013-KA-0158, 11/20/13.

5

On May 30, 2014, the Louisiana Supreme Court denied without stated reasons the writ application filed by Spratt's counsel.[12] Spratt's convictions and sentences became final ninety (90) days later, on August 28, 2014, because he did not file for review with the United States Supreme Court. *Ott v. Johnson*, 192 F.3d 510, 513 (5th Cir. 1999) (period for filing for *certiorari* with the United States Supreme Court is considered in the finality determination under 28 U.S.C. § 2244(d)(1)(A)); U.S. S. Ct. Rule 13(1); *see*, *Jiminez v. Quarterman*, 555 U.S. 113, 121 (2009) (when a state court grants a defendant an out-of-time appeal during state collateral review, the conviction judgment is not final for purposes of federal habeas review until the out-of-time appeal is resolved).

On August 7, 2015, Spratt signed and submitted to the state trial court an application for post-conviction relief asserting the following grounds for relief:[13] (1) he was denied effective assistance of counsel when counsel failed to object during trial to the erroneous jury instruction on the definition of rape; (2) he was denied effective assistance of appellate counsel when counsel failed to assign as error the trial court's use of an erroneous jury instruction on the definition of rape; (3) he was denied effective assistance of counsel when trial counsel failed to file motion to sever the counts; (4) there was prosecutorial misconduct when the State violated his right to a speedy trial because of the delay in obtaining an indictment and trial counsel was ineffective for failing to file a motion to quash the indictment; and (5) the State failed to disclose exculpatory evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). In his *pro se* filed memorandum in support, dated August 17, 2015, Spratt added an additional ground asserting that his

---

[12]*State v. Spratt*, 140 So.3d 1173 (La. 2014); St. Rec. Vol. 11 of 12, La. S. Ct. Order, 2013-K-2960, 5/30/14; La. S. Ct. Writ Application, 13-K-2960, 12/20/13 (filed by counsel).

[13]St. Rec. Vol. 3 of 12, Application for Post-Conviction Relief, dated 8/7/15.

constitutional rights were violated, because Louisiana allowed for convictions by non-unanimous jury verdict.[14]

On December 22, 2015, Spratt's state (and now federal) post-conviction counsel filed a supplemental memorandum addressing only the following claims:[15] (1) he was denied effective assistance of counsel when trial counsel failed to object to the erroneous jury instruction and failed to object to hearsay testimony from the DNA witnesses, Anne Montgomery and Gina Pineda; (2) appellate counsel was ineffective for failing to assign as error the state trial court's use of an erroneous jury instruction; and (3) his speedy trial rights were violated by the delay between arrest and trial.

The State initially filed procedural objections asserting that Spratt's claims were procedurally barred under La. Code Crim. P. art. 930.4(B) and (C), except for the ineffective assistance of counsel claims.[16] After receiving a reply from Spratt's counsel,[17] the state trial court summarily overruled the State's objections and ordered an answer to the application.[18]

The State sought review of that ruling, and, on August 5, 2016, the Louisiana Fourth Circuit granted the State's writ application and reversed the Trial Court's judgment.[19] The appellate court held that Spratt's speedy trial claim was barred from review, because no motion to quash was filed as required by La. Code Crim. Pr. art. 535(b) and related state case law. The court also held that the *Brady* claim was not properly presented or supported under La. Code Crim. Pr. arts. 928 and

---

[14]St. Rec. Vol. 2 of 13, Pro Se Post-Conviction Memorandum, dated 8/17/15.

[15]St. Rec. Vol. 11 of 12, Supplemental Memorandum, 12/22/15 (filed by counsel).

[16]St. Rec. Vol. 11 of 12, State's Procedural Objections, 2/5/16.

[17]St. Rec. Vol. 11 of 12, Traverse, 2/16/16.

[18]St. Rec. Vol. 11 of 12, Trial Court Judgment, 2/29/16.

[19]St. Rec. Vol. 11 of 12, 4th Cir. Order, 2016-K-0302, 8/5/16; 4th Cir. Writ Application, 2016-K-0302, 3/29/16.

926(B)(3). The Court remanded the matter for further proceedings on Spratt's claims of ineffective assistance of counsel for (1) trial counsel's failure to lodge an objection to the Trial Court's jury instruction, (2) appellate counsel's failure to assert as error on appeal of the Trial Court's use of an erroneous jury instruction, (3) trial counsel's failure to file a motion to sever, and (4) trial counsel's failure to object or file a motion to quash based on speedy trial grounds.

Spratt's counsel sought review of that ruling in the Louisiana Supreme Court arguing that the procedural default of the speedy trial claim should have been excused because of trial counsel's error in failing to file a motion to quash.[20] On January 29, 2018, the Louisiana Supreme Court denied the application without stated reasons.[21]

Following receipt of additional briefing, on May 11, 2018, the state trial court denied relief finding no merit in Spratt's ineffective assistance of counsel claims.[22] On July 9, 2018, Spratt's counsel sought review of the ruling in the Louisiana Fourth Circuit asserting only four grounds for review:[23] (1) trial counsel was ineffective for failing to file a motion to quash based on speedy trial grounds; (2) trial counsel was ineffective for failing to correct or object to the erroneous jury instruction on the definition of rape; (3) trial counsel was ineffective for failing to object to hearsay testimony from the DNA witnesses; and (4) petitioner demonstrated excusable failure to raise the speedy trial issue at trial and on appeal because trial and appellate counsel were ineffective.[24]

---

[20] St. Rec. Vol. 12 of 12, La. S. Ct. Writ Application, 16-KP-1659, 9/6/16 (filed by counsel).

[21] *State v. Spratt*, 235 So.3d 1106 (La. 2018); St. Rec. Vol. 12 of 12, La. S. Ct Order, 2016-KP-1659, 1/29/18.

[22] St. Rec. Vol. 1 of 12, Trial Court Judgment, 5/11/18; Minute Entry, 5/11/18; State's Brief, 3/23/18; Defendant's Traverse, 4/6/18.

[23] St. Rec. Vol. 11 of 12, 4th Cir. Writ Application, 2018-K-0567, p. 16, 7/9/18 (mailed by counsel 7/5/18).

[24] Although this fourth claim of excusable cause for the procedural default of the underlying speedy trial claim was listed as a grounds for review, Spratt's counsel did not brief the argument.

The Louisiana Fourth Circuit summarily denied the writ application on July 25, 2018, finding no error in the Trial Court's judgment.[25] On August 27, 2018, Spratt's counsel filed a writ application in the Louisiana Supreme Court asserting the same four grounds.[26] The Louisiana Supreme Court denied relief on March 18, 2019, because Spratt failed to show ineffective assistance of counsel under the *Strickland v. Washington*, 466 U.S. 668 (1984), standards.[27]

## II.     Federal Petition

On April 8, 2019, Spratt's counsel filed a federal petition for habeas corpus and memorandum in support relief asserting the following grounds for relief:[28] (1) improper admission of other crimes evidence in violation of his Due Process rights; (2) violation of his speedy trial rights because of the delayed prosecution; and (3) he was denied effective assistance of counsel when (a) trial counsel failed to correct an erroneous jury instruction and object to hearsay DNA testimony and (b) appellate counsel failed to assign as error on appeal the state trial court's use of an improper jury instruction, the admission of hearsay DNA testimony, and the speedy trial violation.

The State filed a response in opposition to Spratt's federal habeas petition asserting that, although the petition was timely filed, Spratt failed to exhaust state court review of his due process claim related to the other crimes evidence and the claim asserting ineffective assistance of appellate counsel.[29] The State also argues that Spratt's speedy trial claim is in procedural default, as would

---

[25] St. Rec. Vol. 11 of 12, 4th Cir. Order, 2018-K-0567, 7/25/18.

[26] St. Rec. Vol. 12 of 12, La. S. Ct. Writ Application, 18-KP-1436, p. 13, 8/27/18.

[27] *State v. Spratt*, 266 So.3d 281 (La. 2019); St. Rec. Vol. 12 of 12, La. S. Ct. Order, 2018-KP-1436, 3/18/19.
[28] Rec. Doc. No. 1. 1-1, p.2.
[29] Rec. Doc. No. 10.

9

be the unexhausted claims should he now try to exhaust, and the ineffective assistance of trial counsel claims are meritless.

In the traverse to the State's opposition response, his counsel argues that Spratt is entitled to federal habeas relief because the claims asserted have merit.[30] Spratt argues that this Court should consider the due process/other crimes evidence claim to have been exhausted, because the claim on direct appeal made under state law was implicitly "nested in federal Due Process protection."[31] Similarly, Spratt argues that the ineffective assistance of appellate counsel "naturally" arises from his claims that the same attorney was ineffective as trial counsel and therefore should be considered exhausted.[32]

### III. General Standards of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214,[33] applies to this petition, which was electronically filed by Spratt's counsel on April 8, 2018.[34] The threshold questions on habeas review under the amended statute are whether the petition is timely and whether the claim raised by the petitioner was adjudicated on the merits in state court; *i.e.*, the petitioner must have exhausted state court remedies and must not

---

[30]Rec. Doc. No. 14.

[31]*Id.* at p. 5.

[32]*Id.*

[33]The AEDPA comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254, and applied to habeas petitions filed after its effective date, April 24, 1996. *Flanagan v. Johnson*, 154 F.3d 196, 198 (5th Cir. 1998) (citing *Lindh v. Murphy*, 521 U.S. 320 (1997)). The AEDPA, signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments. Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law. *United States v. Sherrod*, 964 F.2d 1501, 1505 n.11 (5th Cir. 1992).

[34]Rec. Doc. No. 1.

10

be in "procedural default" on a claim. *Nobles v. Johnson*, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

In its opposition response, the State concedes timeliness and asserts that Spratt failed to exhaust state court review of two of his claims, which may be technically procedurally barred, and a third claim is in procedural default. Although the record supports both of the State's procedural defenses, Spratt's petition containing both exhausted and unexhausted claims must be dismissed without prejudice for the reasons that follow.

## IV.    Exhaustion Doctrine

As outlined previously, Spratt asserts in his federal petition that (1) other crimes evidence was admitted in violation of his Due Process rights, (2) his speedy trial rights were violated, (3) his trial counsel was ineffective for failure to object to an erroneous jury instruction and to the DNA testimony, and (4) his appellate counsel was ineffective for failure to assert as error on appeal the state trial court's use of an improper jury instruction, the improper introduction of hearsay DNA testimony, and the speedy trial violation. The State argues that Spratt did not allow the state courts the opportunity to review his first and fourth claims before seeking federal habeas relief, and the unexhausted claims are not properly before this federal habeas court.

Exhaustion of all claims through available state court review is a fundamental prerequisite to federal habeas relief under § 2254. *Whitehead v. Johnson*, 157 F.3d 384, 387 (5th Cir. 1998) (citing *Rose v. Lundy*, 455 U.S. 509, 519-20 (1982)); *accord Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973); *Nobles*, 127 F.3d at 419. "[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process," including discretionary review when that review is part of the State's ordinary appellate or collateral review procedures. *O'Sullivan v. Boerckel*, 526 U.S.

838, 845 (1999); *accord Duncan v. Walker*, 533 U.S. 167, 177-79 (2001). "A federal habeas petition should be dismissed if state remedies have not been exhausted as to <u>all</u> of the federal court claims." (emphasis added) *Whitehead*, 157 F.3d at 387 (citing 28 U.S.C. § 2254(b)(1)(A); *Rose*, 455 U.S. at 519-20).

The exhaustion requirement is satisfied when the substance of the federal habeas claims have been "fairly presented" through each level of the state courts, including the highest state court, in a procedurally proper manner. *Id*. (citing *Picard v. Connor*, 404 U.S. 270, 275-78 (1971)). It is not enough for a petitioner to have raised the claims in the lower state courts if the claims were not specifically presented to the state's highest court, and vice versa. *Baldwin v. Reese*, 541 U.S. 27, 32 (2004). A prisoner does not "fairly present" a claim to the state's highest court if that court must read beyond the petition or brief, such as the lower courts' opinions or pleadings, to find a claim not otherwise specifically raised. *Id*. at 32.

In addition, "[a] federal court claim must be the 'substantial equivalent' of one presented to the state courts if it is to satisfy the 'fairly presented' requirement." *Whitehead*, 157 F.3d at 387 (citing *Picard*, 404 U.S. at 275-78). This requirement is not satisfied for exhaustion purposes if the petitioner presents new legal theories or new factual claims in his federal habeas petition. *Id*. (citing *Nobles*, 127 F.3d at 420). For this reason, an ineffective assistance of counsel is not exhausted if the petitioner did not assert the same basis in the state court proceedings that are asserted in the federal habeas petition. *See Ogan v. Cockrell*, 297 F.3d 349, 358 (5th Cir. 2002) ("Because [petitioner] is now proceeding on a different theory than that advanced in the state habeas court, we find this ineffectiveness of habeas counsel claim to be unexhausted."); *Burns v. Estelle*, 695 F.2d 847, 849-50 (5th Cir.1983) (factual bases underlying the ineffective assistance

of counsel claim were "significantly different" from those raised in state court, and therefore, were not exhausted).

Pursuant to these standards, Spratt must have fairly presented the same claims and legal theories urged in this federal court to each of the state courts through the Louisiana Supreme Court in a procedurally proper manner. The State does not contest that Spratt has exhausted state court review of the ineffective assistance of trial counsel claims, argued here to include counsel's failure to correct an erroneous jury instruction and failure to object to the hearsay DNA testimony, and the free-standing speedy trial claim, which is in procedural default for other reasons. Review of these claims is exhausted.

Spratt, however, has not exhausted state court review of his claims that his due process rights were violated by the improper use of other crimes evidence and he was denied effective assistance of appellate counsel. The record reflects in relevant part that, on direct appeal, Spratt's counsel argued that the state trial court erred when it admitted prejudicial other crimes evidence (the testimony of the Tennessee police officers and rape victims) in violation of La. Code Ev. art. 412.2, citing only the statute and two state court case opinions discussing application of that evidentiary rule. The Louisiana Fourth Circuit found no merit in the claim, relying strictly on state case law defining the probative/prejudice balancing test under La. Code Ev. art. 412.2. Neither Spratt nor the state courts relied on or referenced federal law or the Due Process clause when addressing this claim.

Spratt's federal habeas counsel argues that the state law balancing test under La. Code Ev. art. 412.2 is implicitly based in federal law and has elements of due process "nested" within it. The United States Supreme Court, however, requires specific exhaustion of federal claims. There is no mention or argument of any federal constitutional issue or federal law supporting the claim

13

presented in Spratt's direct appeal to have alerted the state courts that his claim included a federal law component.

Spratt also has presented nothing to support his argument that his due process claim is exhausted because the state courts and this federal habeas court should infer that a federal claim was embedded in his state law claim. The Supreme Court's exhaustion doctrine is clear that the petitioner must fairly present the same federal claim to the state courts that is brought in a federal habeas petition, "even if the state court could have identified and addressed the federal question without its having been raised." *Bell v. Cone*, 543 U.S. 447, 451 n.3 (2005) (citing *Baldwin*, 541 U.S. at 30-32). The Supreme Court also has stated that a petitioner choosing to assert a federal issue in the state courts must "indicate the federal law basis for his claim in a state-court petition or brief . . . by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.'" *Howell v. Mississippi*, 543 U.S. 440, 444 (2005) (quoting *Baldwin*, 541 U.S. at 32).

Furthermore, Spratt was represented by counsel in his state appeal and on state post-conviction review and is represented by his state post-conviction counsel in this federal proceeding.[35] The claims and arguments asserted in the state courts and in this federal habeas court are not to be broadly construed as with a *pro se* petition. Furthermore, although federal and state standards on a claim may be similar, "mere similarity of claims is insufficient to exhaust." *Anderson v. Harless*, 459 U.S. 4, 6 (1982); *Duncan v. Henry*, 513 U.S. 364, 366 (1995).

The record contains nothing to establish that Spratt fairly presented or asserted in any state court a federal due process argument as a basis for his challenge to the introduction of the other

---

[35]The Court is aware that Spratt initiated state post-conviction review with a *pro se* filed application, but that application was supplemented by his pleadings filed by his current counsel.

14

crimes evidence under La. Code Crim. P. art. 412.2.[36] State court review of Spratt's federal claim, that the use of other crimes evidence violated his due process rights, was not exhausted.

Spratt also asserts in his federal petition that his state appellate counsel, who also was his trial counsel, was ineffective for failure to assert as error the state trial court's use of the improper jury instruction, the state trial court's admission of the hearsay DNA testimony, and the State's speedy trial violation. The first of these arguments, failure to assert the improper jury instruction, was presented by Spratt and his counsel to the state trial court on post-conviction review and was denied on the merits under *Strickland*.[37] The claim, however, was not presented in Spratt's subsequent writ applications to the Louisiana Fourth Circuit or the Louisiana Supreme Court. Spratt did not provide the appellate courts an opportunity to consider this ineffective assistance of appellate counsel claim, and review of the claim is not exhausted.

Similarly, Spratt did not assert in any state court his arguments related appellate counsel's failure to challenge the hearsay DNA testimony and speedy trial violation. Spratt contends that these claims against appellate counsel were implied in his ineffective assistance complaints asserted against his trial counsel, since it was the same person. As noted above, however, the state courts are not provided a fair and proper opportunity to consider a federal claim if it is not specifically asserted. *Bell*, 543 U.S. at 451 n.3; *Baldwin*, 541 U.S. at 32. Even more compelling in this instance, the exhaustion requirement is not met if the grounds for an ineffective assistance of counsel claim presented in a federal habeas petition are different from those presented to the

---

[36]Spratt clearly states that he is not challenging the constitutionality of La. Code Ev. art. 412.2 as he did on state direct appeal. On that issue in state court, he claimed that statute was unconstitutional because it violated due process. Spratt recognizes that the claim was procedurally barred by the state courts and is <u>not</u> before this federal habeas court. Rec. Doc. No. 14, p.5 n.1.

[37]St. Rec. Vol. 1 of 12, Trial Court Judgment, 5/11/18.

state courts. *Ogan*, 297 F.3d at 358. Spratt's failure to present the ineffective assistance of appellate counsel claims to the state courts at each level in the same form and manner as presented here was a failure to exhaust.

Spratt has denied the state courts the opportunity to review his due process and ineffective appellate counsel claims through to the Louisiana Supreme Court. He presents this court with a "mixed" petition, containing both exhausted and unexhausted claims. The record discloses no good cause for his failure to fully exhaust review of each of his claims before filing in this federal court. The Supreme Court has long required that a "mixed petition" under these circumstances be dismissed without prejudice to allow Spratt to return to state court to pursue complete exhaustion. *Pliler v. Ford*, 542 U.S. 225, 233 (2004) (citing *Rose*, 455 U.S. at 510); *see also*, *Whitehead*, 157 F.3d at 387 (citing *Nobles*, 127 F.3d at 420).

In *Pliler*, 542 U.S. at 230-31, the Supreme Court recognized an alternative to dismissal which allows the petitioner to choose, instead, to amend his federal habeas petition to include on exhausted claims. While the Court also addressed the availability of a stay-and-abeyance in connection with certain "mixed petitions,"[38] it reiterated the long-standing directive that mixed petitions should be dismissed without prejudice to require complete exhaustion. *Id*.

Spratt's federal petition, therefore, should be dismissed without prejudice to allow him to return to state court to exhaust available[39] state court remedies for his unexhausted claims, unless

---

[38]The Supreme Court has made clear that stay-and-abeyance is an extraordinary remedy <u>not</u> to be made readily available to a habeas petitioner. *Rhines v. Weber*, 544 U.S. 269, 278 (2005). The *Rhines* Court cautioned that a stay-and-abeyance "should be available only in <u>limited</u> circumstances," and is appropriate <u>only</u> when the district court determines that there was "good cause" for the failure to exhaust. *Id*. at 277 (emphasis added). Stays also are improper when the unexhausted claims are "plainly meritless" or when the petitioner has engaged in "abusive litigation tactics or intentional delay." *Id*. at 277-78. This case reveals no good cause for petitioner's failure to exhaust properly and fails to warrant consideration of a stay should petitioner so inquire.

[39]The State argues that the unexhausted claims may now be procedurally barred from review in the state courts placing them in technical procedural default. Louisiana law, however, recognizes exceptions to its bar on

he chooses to amend his federal habeas petition to exclude or dismiss the two unexhausted claims, leaving for further review only the exhausted claims of ineffective assistance of trial counsel and speedy trial violation (which is in procedural default). *Pliler*, 542 U.S. at 233.

## V. Recommendation

For the foregoing reasons, it is **RECOMMENDED** that Spratt's petition for issuance of a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 be **DISMISSED WITHOUT PREJUDICE** for failure to exhaust state court remedies, unless Spratt chooses to amend his habeas petition to exclude or dismiss the unexhausted claims.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Servs. Auto. Assoc.*, 79 F.3d 1415, 1430 (5th Cir. 1996).[40]

New Orleans, Louisiana, this 29th day of October, 2019.

_____
**KAREN WELLS ROBY
CHIEF UNITED STATES MAGISTRATE JUDGE**

---

successive and untimely post-conviction applications under La. Code Crim. P. arts. 930.4 and 930.8. For this reason, the Court recommends dismissal without prejudice for failure to exhaust rather than dismissal with prejudice under the technical procedural bar doctrine.

[40]*Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.